IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00024-SBP

CRISTHIAN LEOPOLDO TREJO ARENAS,

    Petitioner,

v.

KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security*; TODD LYONS, *in his official capacity as Acting Director of Immigration and Customs Enforcement*; ARTHUR WILSON, in his official capacity as ICE Field Office Director; JOHNNY CHOATE, *in his official capacity as the Warden of the Aurora Immigration Detention Facility*; PAMELA BONDI, *in her official capacity as the United States Attorney General*; THE EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and THE BOARD OF IMMIGRATION APPEALS,

    Respondents.

---

**MEMORANDUM OPINION AND ORDER**

---

**Susan Prose, United States Magistrate Judge**

Before the Court is Petitioner Cristhian Leopoldo Trejo Arenas ("Petitioner")'s Application for Writ of Habeas Corpus. ECF No. 1 ("Petition"). For the reasons outlined below, the court respectfully **GRANTS** the Petition.

    I.    **BACKGROUND**

Petitioner is a native and a citizen of Mexico who is currently in the custody of the Department of Homeland Security in Aurora, Colorado. Petition at 1. Respondents are Kristi Noem, the Secretary of the Department of Homeland Security—the parent agency of United States Immigration and Customs Enforcement ("ICE")—sued in her official capacity; Todd Lyons, the acting director of ICE, sued in his official capacity; Arthur Wilson, the Field Office

Director of ICE in Colorado, sued in his official capacity; Pamela Bondi, the Attorney General of the United States, sued in her official capacity; the Executive Office for Immigration Review, the federal agency responsible for custody redeterminations relating to non-citizens charged with being removable from the United States; Johnny Choate, the warden of the Aurora Detention Center, where Petitioner is held in custody, sued in his official capacity; ICE, the federal agency responsible for custody decisions relating to non-citizens charged with being removable from the United States, including the arrest, detention, and custody status of non-citizens; and the Board of Immigration Appeals, the federal agency responsible for appeals of custody redeterminations relating to non-citizens charged with being removable from the United States (collectively, "Respondents"). *Id*. at 6-8.

The parties do not appear to dispute that Petitioner entered the United States in November 2022 and had not left the United States before he was detained in September 2025. *Id*. at 2; *see generally* ECF No. 8. Neither party asserts that Petitioner has ever been convicted of any crime. Petition at 2; *see generally* ECF No. 8.

Petitioner filed an application for bond determination on December 13, 2025, requesting bond relief after over two months in immigration detention. Petition at 2. A hearing was set for December 17, 2025, before the immigration court. *Id*. On December 17th, 2025, the immigration court determined that it lacked jurisdiction to grant Petitioner bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (BIA 2025) and 8 U.S.C. § 1225(b)(2)(A). *Id*.

Petitioner filed his Petition on January 5, 2026, seeking, inter alia, a declaration that Petitioner's detention without the possibility of bond is unlawful, an order directing that Petitioner be released on bond, and attorneys' fees and costs. *See generally id*. In making these

2

requests, Petitioner argues that by detaining Petitioner without a bond hearing, Respondents have violated Petitioner's Fifth Amendment due process rights and have also violated the Immigration and Nationality Act ("INA"). *Id*. Respondents filed a response to the Petition on January 20, 2026. "Response," ECF No. 8. The parties have consented to this magistrate judge's jurisdiction. ECF No. 10; *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. § 72; ECF No. 11.

## II.  ANALYSIS

District courts may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

The court first notes that although Petitioner requests an order directing that he be released on bond, his arguments instead assert that he has the right to a bond hearing before an immigration judge, not the right to be released without a bond hearing.[1] Accordingly, the court construes Petitioner's Petition as though he has requested an order directing that he is entitled to a bond hearing before an immigration judge.

The parties appear to agree that the primary conflict between them centers around whether 8 U.S.C. § 1225 ("Section 1225") or 8 U.S.C. § 1226 ("Section 1226") applies to Petitioner. The parties agree, as does the court, that Sections 1225 and 1226 govern detention of noncitizens prior to a final order of removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 287

---

[1] Petitioner cursorily asserts that "[b]ecause the Petitioner does not fall within any statutory class that would substantiate a basis for mandatory detention under the INA, his continued confinement is ultra vires, and he should be released immediately." Petition at 11. However, Petitioner offers no actual argument in support of this statement.

(2018). The parties also agree that Petitioner has been denied a bond hearing based on the immigration court's conclusion that Petitioner is properly detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and that this provision does not entitle Petitioner to a bond hearing.

At this point, the parties diverge. While Respondents argue that the immigration court was correct in reaching its determination that 8 U.S.C. § 1225(b)(2)(A) applied to Petitioner, Petitioner asserts that the immigration court should have instead found he was properly detained pursuant to 8 U.S.C. § 1226(a), under which Petitioner asserts he is entitled to a bond hearing.

In response, Respondents argue that Section 1225 applies to "applicants for admission," a term of art that Respondents assert includes noncitizens who are unlawfully present in the United States but were never admitted; that "applicants for admission" are not limited to noncitizens who have submitted an immigration application; that Section 1225(b) does not just apply to arriving aliens or those who unlawfully entered the United States "recently"; and that Section 1226, in contrast, provides for detention and bond hearings for *other* categories of noncitizens who are subject to removal.[2]

Key to each of Respondents' arguments is that a close reading of both Section 1225 and *Jennings* reflects that Petitioner is an "applicant for admission" who is therefore properly detained subject to 8 U.S.C. § 1225(b)(2)(A) and thus does not have a right to a bond hearing. In fact, a close reading of both Section 1225 and *Jennings* reflects the opposite.

As both this court and other courts have previously observed, *Jennings* states that Section 1226 "sets forth 'the default rule' for detaining noncitizens 'already present in the United

---

[2] Respondents also argue that Section 1225 does not grant applicants for admission a right to a bond hearing, but Petitioner does not dispute this assertion here.

4

States.'" *Quispe-Ardiles v. Noem*, No. 25-cv-01382-MSN-WEF, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 303). This section permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings, subject to certain exceptions not applicable here. *Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a)(1)-(2) (the Attorney General "*may* continue to detain" or "*may* release" the noncitizen (emphasis added)). "Section 1226(a) thus establishes a discretionary framework for the detention of noncitizens pending removal proceedings." *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227, at *2 (D. Colo. Jan. 6, 2026).

Meanwhile, also according to *Jennings*, Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission." *Jennings*, 583 U.S. at 297. This section provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" pending removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Under § 1225(a)(1), an "applicant for admission" is

> [a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters).

Absent an exception for urgent humanitarian reasons not implicated in this case, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings*, 583 U.S. at 297); *see also Briales-Zuniga*, 2026 WL 35227, at *2.

Again, the parties agree that the immigration court found that Petitioner was detained

5

pursuant to § 1225(b) and that this provision applies exclusively to "applicants for admission." Respondents argue that *Jennings* establishes that an "applicant for admission" would include an individual who is present in the United States but has never been lawfully admitted, like Petitioner. As noted above, Respondents also argue that "applicants for admission" are not limited to noncitizens who have submitted an immigration application and that Section 1225(b) applies to *all* applicants for admission, not just arriving aliens or those who unlawfully entered the United States recently.

Respondents state that "[t]he Court in *Jennings* recognized that the statute uses the term 'applicant for admission' as a term of art," quoting *Jennings* for the proposition that "[u]nder . . . 8 U.S.C. § 1225, an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is *treated as* 'an applicant for admission.'" Response at 4 (quoting *Jennings*, 583 U.S. at 287) (emphasis added). Respondents additionally state that this language signifies that "noncitizens who are present in the country and were never lawfully admitted are 'deemed' to be 'applicants for admission.'" *Id*. However, Respondents ignore that the language they cite from *Jennings* is immediately preceded by the Supreme Court's clarification that the process of deciding who may enter the country "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. The Court directly contrasts this process with considerations regarding "who may stay here *after* entering," *id*. at 286 (emphasis added); the Court notes that "an alien present in the country may still be removed if he or she [was] . . . inadmissible at the time of entry . . ." but states that Section 1226, not 1225, governs such cases. *Id*. at 288. Accordingly, the court disagrees with Respondents that the language they quote from

6

*Jennings* suggests that the term "applicant for admission" is a term of art referring to *all* noncitizens who were never lawfully admitted to the United States. Based on the plain language of *Jennings*, and in direct contrast to Respondents' arguments, at least some noncitizens who were never deemed admissible upon entry to the United States or otherwise lawfully admitted, but who are nonetheless present in the United States, are properly detained pursuant to Section 1226, not 1225.

Additionally, and also dispositively, Respondents' arguments as to why Section 1225 applies to Petitioner rather than Section 1226, including Respondents' arguments regarding the text of the two provisions, in large part echo arguments rejected by courts across the country and in this judicial district.[3] Courts within this District and throughout the country have concluded that "the plain text and structure of § 1225 and § 1226 support a determination that

---

[3] *Compare* ECF Nos. 1 and 8 *with*, *e.g.*, *Espinoza Ruiz v. Baltazar*, No. 25-cv-03642-CNS, 2025 WL 3294762 (D. Colo. Nov. 26, 2025); *Arauz v. Baltazar*, No. 25-cv-03260-CNS, 2025 WL 3041840 (D. Colo. Oct. 31, 2025); *Hernandez Vazquez v. Baltasar, et al.*, No. 25-cv-3049-GPG, ECF No. 22 (D. Colo. Oct. 23, 2025); *Loa Caballero v. Baltazar, et al.*, No. 25-cv-3120-NYW, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Moya Pineda v. Baltasar, et al.*, No. 25-cv-2955-GPG, ECF No. 21 (D. Colo. Oct. 20, 2025); *Mendoza Gutierrez v. Baltasar, et al.*, No. 25-cv-2720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Marquez Rico v. Baltazar, et al.*, No. 25-cv-3543-CNS (D. Colo. Dec. 16, 2025); *Carrillo Fernandez v. Knight*, No. 2:25-CV-02221-RFB-BNW, 2025 WL 3485800 (D. Nev. Dec. 4, 2025); *Garcia-Arauz v. Noem*, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); *Escobar Salgado v. Mattos*, No. 2:25-cv-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025); *Ramos v. Rokosky*, No. 25-cv-15892 (EP), 2025 WL 3063588 (D.N.J. Nov. 3, 2025); *Godinez-Lopez v. Ladwig*, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Romero v. Hyde*, No. 25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis*, No. 25-cv-5937 (DEH), 795 F.Supp.3d 475 (S.D.N.Y. Aug. 13, 2025).

§ 1225(b)(2)(A)'s provision for mandatory detention 'does not apply to someone like [Petitioner], who has been residing in the United States for more than two years.'" *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *4 (D. Colo. Oct. 24, 2025) (quoting *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 484 (S.D.N.Y. 2025); *see also, e.g.*, *Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("[T]he plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States."); *Martinez v. Hyde*, No. 25-cv-11613-BEM, 2025 WL 2084238, at *7-8 (D. Mass. July 24, 2025) (concluding that the textual "tension between sections 1225 and 1226 motivates the conclusion that they apply to different classes of aliens," and that given the "line historically drawn between these two sections, making sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country'") (citations omitted); *Mendoza Gutierrez*, 2025 WL 2962908, at *5 ("[Section] 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [Mr. Gutierrez], who has been residing in the United States for more than two years." (collecting cases)); *Jimenez*, 2025 WL 2639390, at *8 ("Because § 1225(b)(2)(A) applies to applicants for admission who are seeking to enter the United States, it cannot apply to Jimenez, who has already entered the country and has been residing here for over two years.").

Because of, inter alia, the title of Section 1225, which reads "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and limiting

8

language within a sub-provision of Section 1225 regarding detention of noncitizens who cannot show they have been in the United States for more than two years, this court agrees with these prior decisions. *See, e.g.*, *Hernandez v. Baltazar*, 2025 WL 2996643, at *5 (the title of Section 1225 clearly indicates that the statute governs "arriving" noncitizens, not those present in the United States already), *6 (the fact that "§ 1225(b)(1)(A)(iii)(II)'s language explicitly limit[s] mandatory detention to noncitizens who have been in the U.S. for *less than two years*" suggests that Section 1225 is not meant to apply to noncitizens who have been in the U.S. for significantly longer) (emphasis in original) (collecting cases); *Barrera v. Tindall*, No. 25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (the title of Section 1225 reflects that it "is limited to noncitizens arriving at a border or port and [ ] presently 'seeking admission' into the United States"); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("The use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States," and this reading is bolstered by the "inspection scheme" and discussions of stowaways and crewmen in Section 1225); *Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025) (concluding that detention authority arising from Section 1225 is properly exercised at or near the port of entry, while detention authority arises from Section 1226 when a noncitizen is arrested in the interior of the United States, in part because "the titles and headings of § 1225 repeatedly cabin its application to 'Inspections,' which, as petitioner convincingly argues, occur at ports of entry, their functional equivalent, or near the border"); *cf. Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (the Supreme Court has "long considered" that the title of a statute and the heading of a section are tools available for resolution of a doubt about the meaning of a statute). The court finds the

reasoning set forth in these cases compelling and agrees with these numerous decisions holding that Section 1225 applies to *arriving* noncitizens seeking admission, while Section 1226 applies to noncitizens like Petitioner who are already present in the United States.

Respondents also argue that the legislative history here supports Respondents' view of Sections 1225 and 1226, stating that "Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ('IIRIRA') to stop conferring greater privileges and benefits on those who entered the United States unlawfully as compared to those who lawfully present themselves for inspection at a port of entry." Response at 8. This argument, too, has previously been rejected on numerous occasions by courts within this District and other courts nationwide. *See Hernandez v. Baltazar*, 2025 WL 2996643, at *7 (concluding of a substantively identical legislative history argument regarding the IIRIRA that "[t]he Court joins the many other courts nationwide who have declined to accept Respondents' novel new interpretation of decades-old law"); *7 n.3 (collecting cases); *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades' support finding that § 1226 applies to these circumstances.") (citation omitted).

Additionally, the court notes that long after the IIRIRA was enacted, the Laken Riley Act amended Section 1226. Respondents entirely fail to address this aspect of the legislative history, and the Laken Riley Act directly contradicts Respondents' arguments regarding the IIRIRA. "Now, as codified in Section 1226(c), the Attorney General *must* detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or

paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid documentation, or, 'is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.'" *Edahi v. Lewis*, No. 25-cv-129-RGJ, 2025 WL 3466682, at *5 (W.D. Ky. Nov. 27, 2025) (emphasis added). "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995). "The Laken Riley Act added new mandatory detention provisions to an otherwise discretionary statute. If Section 1225(b)(2)(A) governed certain noncitizens as the United States claims it does, the Laken Riley Act would have been redundant and unnecessary." *Edahi*, 2025 WL 3466682, at *7. This is "because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' [so] ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) (quoting § 1225(b)(2)(A)). And further, "[courts] do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022).

      Accordingly, Respondents' proposed interpretation of the statutory scheme "would either result in a statutory scheme that 'ICE would never need to rely on' or [ ] Section 1226(c)(1)(E) would now be 'redundant' with 1225(b)(2)(A) as both provisions regulate the mandatory detention of the same category of noncitizens as defined in Section 1182(a)(6)(A)(i)." *Edahi*, 2025 WL 3466682, at *11. In other words, there would be no need to enact

§ 1226(c)(1)(E) if § 1225(b)(2)(A) already covers the same ground. "Therefore . . . the 'newly added provisions' of the Laken Riley Act *do* indicate that a better interpretation of the interplay between Section 1225 and Section 1226 likely does exist." *Id*. Moreover, this reading of the interplay between Section 1225 and Section 1226 "avoid[s] a reading which renders some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995); *see also, e.g.*, *Chilel v. Sheehan*, No. C25-4053-LTS-KEM, 2025 WL 3158617, at *2 (N.D. Iowa Nov. 12, 2025) (declining to follow the United States's interpretation of Section 1225 as it relates to the Laken Riley Act, and finding that the court "must reject reading in the superfluousness that the Government requests"). The court therefore rejects Respondents' legislative history arguments and instead finds that the legislative history supports Petitioner here.

Turning briefly to Petitioner's allegations, Petitioner refers to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), a BIA decision, as the ruling that the immigration court relied upon in determining that Petitioner was properly detained pursuant to Section 1225. The court notes that *Hurtado* has no precedential value here. *See, e.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (district courts have no obligation to defer to the BIA); *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1086-87 (9th Cir. 2025) (holding that after *Loper Bright*, BIA decisions "have only that power [to persuade] and we 'need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous'") (quoting *Loper Bright*, 603 U.S. at 413); *Rodriguez v. Bostock*, No. 25-cv-05240-TMC, 2025 WL 2782499, at *26 (W.D. Wash. Sept. 30, 2025) (holding the same). And the court also finds *Hurtado*'s analysis unpersuasive. The ruling in *Hurtado* would appear to suggest that the legislative history of the IIRIRA would reflect that the Petitioner here is properly detained under Section 1225. As noted

12

above, this argument has previously been rejected on numerous occasions, and the court finds the analysis articulated in these prior cases compelling.

Additionally, the court notes that "the BIA's current position is inconsistent with its earlier pronouncements." *Rodriguez v. Bostock*, 2025 WL 2782499, at *26. Among other inconsistencies, the BIA previously "stated unequivocally that a noncitizen who had entered the United States unlawfully three years earlier was subject to discretionary detention under section 1226(a)" in *Matter of Akhmedov*, 29 I&N Dec. 166 (BIA 2025). *Rodriguez v. Bostock*, 2025 WL 2782499, at *26. And "[a]s recently as August 4, 2025, the Attorney General designated the Board's decision in *Matter of Akhmedov* 'as precedent in all proceedings involving the same issue or issues.'" *Id.* (citing 29 I&N Dec. at 166 n.1). "An agency's power to persuade rests at least in part on its consistency with earlier and later pronouncements." *Id.* (cleaned up) (citing *Loper Bright*, 603 U.S. at 432-33) (also noting other inconsistencies between the BIA's current position and earlier pronouncements). The court finds *Hurtado*'s analysis to be inconsistent with its earlier pronouncements and therefore unpersuasive.

Moreover, *Hurtado* relies in part on the conclusion that this court's preferred interpretation of the interplay between Section 1225 and Section 1226 subsequent to the Laken Riley Act, as discussed above, "would, in fact, render . . . § 1225(b)(2)(A)[ ] superfluous." 29 I&N Dec. at 222. *Hurtado* does not elaborate upon this point, and the court finds it to be incorrect. That provision refers to "the case of an alien who is an applicant for admission," 8 U.S.C. § 1225(b)(2)(A); this court's interpretation of Section 1226 would not cover aliens who present themselves or are detained *when they are crossing the border*, so § 1225(b)(2)(A) would still be applicable to such aliens. Thus, despite what *Hurtado* says, the provision would not be

13

rendered superfluous under this court's preferred interpretation. The court therefore rejects the legislative history analysis delineated in *Hurtado*, as well as its ultimate holding, and additionally concludes that the case has no precedential value here.

The above is sufficient for this court to conclude that Petitioner is properly detained pursuant to Section 1226, not 1225. Respondents' arguments each rely upon the concept that Petitioner is an "application for admission," but as the court explains above, the court does not find that *Jennings*, the language of the provisions at issue, or the legislative history reflect that Petitioner is an applicant for admission. Instead, the court concludes that Petitioner is subject to Section 1226 as "an alien present in the country . . . [who was] inadmissible at the time of entry . . ." *Jennings*, 583 U.S. at 288.

Respondents argue cursorily that Petitioner has no due process right to a bond hearing. First, Respondents argue that to show that he has been denied due process, Petitioner would need to show that he has been deprived of some statutory right. Respondents assert that because he is a noncitizen, Petitioner only has rights provided for via statute, and Petitioner has not shown that he has been deprived of a statutory right because Section 1226 only grants the Attorney General the *discretion* to grant bond rather than granting detainees the *right* to a bond hearing.

The court finds this argument to be insufficiently developed. Moreover, contrary to Respondents' assertions, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The due process protections of the Fifth Amendment extend to "all persons within the territory of the United States . . . [and] even aliens shall not be . . . deprived of life, liberty, or property without due process of law." *Wong Wing v. United*

*States,* 163 U.S. 228, 238 (1896); *see also Zadvydas v. Davis*, 533 U.S. 678, 679 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Additionally, the "fact that some detention is permissible does not change the fact that a detainee suffers significant liberty deprivations. Moreover, the government's exercise of its power to detain immigrants pending removal 'is subject to important constitutional limitations.'" *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) (quoting *Zadvydas*, 533 U.S. at 695). "Even if Petitioner is a noncitizen in removal proceedings, that does not mean that he does not have a strong private interest in being free from civil detention." *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1182 (D. Colo. 2024) (concluding under similar circumstances that petitioner was entitled to an individualized bond hearing). The court accordingly rejects this argument.

Respondents also argue that pursuant to *Demore*, the Supreme Court has concluded that detention during removal proceedings is constitutionally permissible and that because, as in *Demore*, Petitioner's detention here has a definite endpoint, Petitioner's continued detention is permissible as well. The court also finds this argument to be insufficiently developed. Moreover, the court has previously analyzed *Demore* in ruling on a similar issue and concluded that, inter alia, the regulations at issue here provide for fundamentally different treatment of noncitizens in *discretionary* detention pursuant to § 1226(a)—the provision that this court rules Petitioner is properly detained under—and noncitizens in *mandatory* detention pursuant to § 1225(b)(2)(A) or § 1226(c), as in *Demore*. *See Merchan-Pacheo v. Noem*, No. 25-cv-03860-SBP, 2026 WL 88526, at *4-6, 13 (D. Colo. Jan. 12, 2026). The court refers the parties to the analysis set forth in this

opinion and rejects Respondents' argument for the reasons stated therein.[4]

"Having erroneously concluded that Petitioner was mandatorily detained under § 1225, the [immigration judge] in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community, threatened national security, or was at risk of flight." *Velasquez Salazar v. Dedos*, No. 25-cv-00835-DHU-JMR, 2025 WL 2676729, at *5 (D.N.M. Sept. 17, 2025). "Thereafter, Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process." *Id*. The court may therefore conclude its analysis here. Moreover, the court need not reach Petitioner's other arguments for granting the Petition, as—except for the limitations to the scope of the court's analysis addressed above—the court finds that the relief requested by Petitioner may be granted. *Cf., e.g., Hernandez v. Baltazar*, 2025 WL 2996643, at *8 (where the parties disputed whether petitioner was properly detained pursuant to § 1225 or § 1226(a), granting petitioner a bond hearing pursuant to § 1226(a), but declining to reach petitioner's due process arguments due to having already afforded him the relief he sought).

Accordingly, the court respectfully grants Petitioner's Petition in part, declares Petitioner's detention without the possibility of bond unlawful pursuant to the Due Process clause of the Fifth Amendment, and orders that Petitioner be granted a bond hearing before an immigration judge pursuant to Section 1226 within seven days of publication of this Order. If

---

[4] Respondents also argue that "[d]ue process does not require that the government bear the burden of proof at any bond hearing." Response at 11. However, Petitioner has not raised any argument regarding burden of proof, nor has he asked the court to rule upon or otherwise address the issue of burden of proof. Accordingly, the issue of burden of proof is not before this court.

Petitioner has not been provided with such a bond hearing within ten days of publication of this Order, he shall be immediately released. *Velasquez Salazar*, 2025 WL 2676729, at *5 (awarding similar relief); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 786 (E.D. Mich. 2025) (same); *Kostak v. Trump*, 2025 WL 2472136, at *4 (same); *Lopez Benitez v. Francis*, 2025 WL 2267803, at *14 (S.D.N.Y. Aug. 8, 2025) (ordering immediate release).

As for Petitioner's request for costs and fees, "the Court notes that under Local Rule 54.3, 'a motion for attorney fees shall be supported by affidavit.' Therefore, Petitioner may file a motion for attorney fees that complies with the applicable rules." *L.G. v. Choate*, 744 F. Supp. 3d at 1187 (citations omitted); *see also Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *9 n.8 (D. Colo. Oct. 22, 2025) (holding the same).

## CONCLUSION

For the foregoing reasons, the court respectfully **GRANTS** Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, and orders Respondents to provide Petitioner with an individualized bond hearing pursuant to Section 1226(a) no later than seven days from the date of this Order. Respondents are also ordered to file a status report in order to certify compliance within ten days of the issuance of this Order. If Petitioner has not been provided with such a bond hearing at the time this status report is due, he shall be immediately released.

DATED: February 5, 2026                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge